## John T. Perkins, Appellee, v. Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Appellant.

1. CARRIERS, § 96*—*liability for delay in transportation and delivery.* A common carrier is not necessarily liable for damages by reason of failure to deliver goods upon schedule or within a reasonable time, unless such failure or delay is caused by the negligence of the carrier.

2. CARRIERS, § 234*—*when not liable for delay in carriage of live stock.* In an action for damages for delay in the transportation and delivery of live stock, an excuse offered that the delay was caused by a heavy snow, *held* a good defense in the absence of proof that carrier was negligent.

3. CARRIERS, § 96*—*duty to deliver within a reasonable time.* The duty to deliver within a reasonable time is merely a term engrafted by legal implications upon the promise or duty to deliver generally.

4. CARRIERS, § 96*—*excuse for delay.* Where the duty to deliver within a reasonable time arises by legal implication, the common carrier stands upon the same ground with other bailees, and may excuse the delay in the delivery of the goods by accident or misfortune, although not inevitable or produced by the act of God. In such emergency the carrier is only required to exercise due care and diligence to guard against delay, and if it occurs without its fault or negligence to omit no reasonable effort to secure the safety of the goods.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

5. CARRIERS, § 247*—*burden of proving excuse for delay.* When unreasonable delay is proved, the burden of proof to excuse the delay is upon the carrier.

6. CARRIERS, § 249*—*when question whether facts excuse delay is for the court.* As a rule the question whether the delay was excusable is for the jury, but where there is no conflict in the evidence, and no evidence to rebut the excuse for delay and the excuse offered is sufficient in law, the question whether the facts excuse the delay becomes a question of law for the court.

7. CARRIERS, § 250*—*when instructions ignoring excuse for delay erroneous.* In an action for delay in the carriage of live stock, instructions not taking into account any legitimate excuse for the delay, *held* vicious.

Appeal from the Circuit Court of White county; the Hon. WILLIAM H. GREEN, Judge, presiding. Heard in this court at the March term, 1913. Reversed and remanded. Opinion filed October 9, 1913.

N. C. BAINUM and P. J. KOLB, for appellant.

J. M. ENDICOTT, for appellee; CONGER, PEARCE & CONGER, of counsel.

MR. PRESIDING JUSTICE MCBRIDE delivered the opinion of the court.

This was an action commenced before a justice of the peace appealed to the Circuit Court of White County, in which court judgment was rendered against the defendant for $103.61, to reverse which the defendant prosecutes this appeal.

It appears from the evidence that on January 11, 1912, appellee had purchased two car loads of stock consisting of twenty-one head of cattle and one hundred and forty-nine hogs and some calves, which were placed in the stock pens of appellant at or near Crossville, ready for shipment. Appellant furnished appellee two cars in which to load this stock preparatory to shipment and was to be taken out by a train which was expected to pass through Crossville at about 1:30 of the morning of January 12th. Appellee loaded his stock in the cars and had it ready for shipment but

the train did not arrive until about 5:30 in the morning. It grew very cold and a heavy snow fell during the night; the wind blew and caused the snow to drift badly in places. Upon the arrival of the train the engine was cut loose to go in on the siding, or switch, for the two cars of stock. There were, however, standing between the engine and the two cars of stock, two box cars which it was necessary to pull out before they could reach the cars of stock. The engine passed down upon the side track and was coupled to the two box cars and started with them and had not gone more than a car length or so when by some means one of the box cars was thrown off the track, which created an obstruction between the engine and the cars loaded with stock. This was the only track by which the engine could obtain access to the cars loaded with the stock. It appears from the evidence that the snow had drifted upon this side track and was in places very deep, and the witnesses say that on account of this heavy snowdrift the truck of one of the box cars came off the center of the truck so that the car could not be moved by the train crew and formed an obstruction so that they could not take out the cars of stock. The train crew was thereupon obliged to leave the stock and proceed to their destination with their train. The agent and officers of the road were notified of the switch being blocked and appellee was directed to unload his stock in the pens and hold it for another train. There were no freight trains over appellant's line during the day but along in the afternoon about five or six o'clock the wrecker came down and removed the box car, whereupon appellee was again directed to load his stock to be taken out about 1:30 in the morning of January 13th. This train was late and the stock was not taken out until late in the forenoon of the 13th, whereupon it was taken to Indianapolis, arriving there on the 14th of January, and in the regular course of shipment it would have arrived there on the 13th of January. The evidence discloses that between the

times that appellee loaded his stock upon the cars first, and the second loading, that there was considerable shrinkage. The evidence shows it to have amounted to about one thousand three hundred and seventy-five pounds upon the cattle and seven hundred and twenty pounds upon the hogs and that the shrinkage upon the cattle was five and one-fourth cents and upon the hogs six and one-fourth cents a pound, and appellee claims he was otherwise damaged by purchasing extra corn and care for his stock.

There is not much dispute about the facts in this case. The witnesses for plaintiff and defendant agree that it was a very cold night, a heavy snow storm and that the snow had drifted pretty badly; that the track at this place was all right and appellee in his testimony says, "There was nothing wrong with the track there, only that a snow had fallen. There were places where the snow had drifted and places where it had not." The testimony of appellant's witnesses shows the heavy snow; that the track was all right and that in attempting to remove the box cars so as to attach the engine to the stock cars that on account of the heavy snowdrift one of the box cars was partly derailed and that a crew was unable to get it upon the track and had to abandon it and had to leave the stock loaded in the cars at the stock pen. It also appears that on account of the stormy weather no freight trains were run upon this road during the next day, nothing but the wrecker and some passenger trains; that the stock was delayed in shipment at least one day and that the appellee was damaged by loss and shrinkage of his stock and in expenses incurred by him in caring for the stock, and it is not disputed but what the appellee was damaged to the extent claimed by him, but appellant insists that the delay in the shipment of the stock in question was unavoidable, due to a heavy snowstorm, and was not due to any negligence of appellant and that appellant is not liable for the damages sustained.

As we understand the law, a common carrier is not

necessarily liable for damages by reason of a failure to deliver goods upon schedule or within a reasonable time, unless such failure or delay is caused by the negligence of said carrier. "His duty is to deliver the goods within a reasonable time, which is a term implied by the law in the contract to deliver; as Tindal, C. J. puts it, when he says, 'the duty to deliver within a reasonable time being merely a term engrafted by legal implications upon the promise or duty to deliver generally.' In this respect, therefore, the common carrier stands upon the same ground with other bailees, and may excuse delay in the delivery of the goods by accident or misfortune, although not inevitable or produced by the act of God. All that can be required of him in such an emergency is, that he shall exercise due care and diligence to guard against the delay, and that if it occurred without his fault or negligence, he shall omit no reasonable efforts to secure the safety of the goods." Hutchinson on Carriers, sec. 330. And the same author in section 331 says: "Accordingly, it has been held that when the carrier's canal-boat was run into by a scowl, which made it necessary for him to stop for repairs, the delay thereby occasioned was excusable; or when he was delayed by deep snow, which made the road temporarily impassable; or the washing away of a bridge over a stream which it was necessary for the carrier to cross."

In the case of *Bacon v. Cleveland, C., C. & St. L. Ry. Co.*, 155 Ill. App. 40, it is said: "A common carrier is bound to deliver goods without unreasonable delay, but the failure of a common carrier to deliver goods within a reasonable time involves the consideration of the question of negligence by the carrier, and a delay however long cannot be said to be unreasonable if the carrier can show that it was free from any negligence which contributed to such delay." In the case of *Chicago & A. R. Co. v. Simms*, 18 Ill. App. 68, the fact that, "It was a fearful cold night, as cold as I ever

saw it," was said by the Court to excuse a delay in the shipment by a common carrier. We agree with counsel for appellee that a common carrier is liable for damages caused by unreasonable delay in the carriage of live stock when caused by their own negligence, and when unreasonable delay is proved that the burden of proof to excuse such delay is on the carrier. While as a rule the jury is to determine the question as to whether or not the delay is excusable, yet when there is no conflict in the evidence and no evidence introduced to rebut the excuse for delay, and the excuse as offered is sufficient in law, then in our opinion it becomes a question of law for the court to determine as to whether or not such facts excuse the delay. We are, however, of the opinion that the evidence in this case shows such a state of facts as excuses the defendant for the delay complained of, and no effort having been made by the appellee to dispute the facts by which appellant sought to excuse the delay, we do not think that the jury were warranted in finding a verdict for the plaintiff. The evidence discloses that the track was all right; that the engine and appliances for hooking on to the box cars were in good condition and that the box cars would have been moved had it not been for heavy snow that had fallen, and this sufficiently accounted for the failure to take the stock out with the train on the morning of January 12th; that the stock was taken out by the next stock train that passed after the box cars were removed out of the way. The evidence being of this character it was at least necessary that the jury should have been correctly instructed with reference to the law, and as we view it, this was not done.

Counsel for appellant complains of appellee's third and fifth instructions. The third instruction is as follows: "The Court instructs the jury that where stock is placed in cars provided for them by the railroad company for transportation in time for the next regular stock train, the station agent of the Company at the place of shipment hav-

ing knowledge of the fact, it is the duty of the company to carry the stock by the next regular stock train, and by their neglect to do so they will be liable for whatever damages, if any, may result by reason of the delay,'' and the fifth instruction is: ''You are instructed that a common-carrier cannot escape liability for loss occasioned by delay in transportation of goods by showing the delay to have been caused by the ordinary accident of railroad traffic.'' These instructions are vicious and are not in harmony with the views expressed in this opinion, and do not take into account any legitimate excuse that may exist to cause the delay in shipment, and no instructions were given that in our judgment would correct the error in the giving of these. We are also of the opinion that the court erred in refusing defendant's instructions, which were to the effect that if the defendant exercised reasonable care in attempting to get the stock out from the pens, and that the derailment of the car was without any fault or negligence upon the part of the defendant and that the defendant was reasonably diligent in the removal of the obstruction, there would be no liability.

It may be that appellee upon another trial will be able to overcome the facts set up by the defendant as an excuse for delay, and for that reason we remand the case to give him an opportunity. As the record stands we are of the opinion that the Court erred in the giving and refusing of instructions and that the verdict of the jury was not warranted by the evidence, and the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*